IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MONTY CLAY, individually and as next
friend of J.C.C. and J.M.C., and as Personal
Representative of the Estate of Amy Clay;
LYNDA WILSON; LINDA PHILLIPS, as
next friend of G.A.P.; BRENDAN PHILLIPS;
DALE PHILLIPS, SR., individually and as
the Personal Representative of the Estate of
Dale Leighroy Phillips, Jr.; and KAREN B.
PHILLIPS,

     Plaintiffs,

vs.                          **Case No. 6:14-cv-235-Orl-36GJK**

AIG AEROSPACE INSURANCE
SERVICES, INC.; CHARTIS AEROSPACE
INSURANCE SERVICES, INC.;
WILLIAMSON AIRCRAFT, INC.;
AIR-TEC, INC.; ERIC RUHE; BOB RUHE
AG SERVICE, INC.; RUHE SALES, INC.;
and MARILYN RUHE,

     Defendants.

_____/

## DEFENDANTS, MARILYN RUHE, BOB RUHE AG SERVICE, INC. AND RUHE SALES, INC.'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND TO QUASH SERVICE OF PROCESS WITH MEMORANDUM OF LAW IN SUPPORT

COMES NOW INTO COURT, Defendants, MARILYN RUHE, in her individual

capacity, and BOB RUHE AG SERVICE, INC. and RUHE SALES, INC. (hereafter,

"RUHE CORPORATIONS"), by and through undersigned counsel, and by way of special

appearance solely for the purpose of contesting and objecting to service of process on,

and the personal jurisdiction of, this Court over Defendants, hereby files and serve this

Motion to Dismiss the Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction and to Quash Plaintiffs' Service of Process.  In support hereof, Defendants state as follows:

1.     The instant case is a wrongful death action arising out of the crash of a single-engine Piper aircraft registered as N7147P.  Complaint, paras. 1, 18.

2.     The aircraft accident is alleged to have occurred during a flight from Texas to Oklahoma on February 20, 2012.  Id.

3.     The aircraft accident is alleged to have resulted in the untimely deaths of pilot, Dale Leighroy Phillips, Jr., and his passenger, Amy Clay.  Id.

4.     Plaintiffs allege the aircraft accident was caused by the failure of the aircraft engine's vacuum pump which is a component attached to the aircraft engine.  Complaint, para. 19.

5.     Plaintiffs' Complaint contends "[a] substantial part of the events or omissions giving rise to the claims alleged herein occurred in Orange County, Florida."  Complaint, para. 2.

6.     In point of fact, based on the clearly stated allegations in the Complaint, Plaintiffs solely base jurisdiction in the Middle District of Florida *on a single sale of the aircraft engine and the accessory vacuum pump at issue* between two Florida corporations: Air-Tec, Inc. in Mims, Florida[1] and Williamson Aircraft, Inc. in Orlando, Florida.[2]

---

[1] Plaintiffs allege in paragraph 20i that "the Ruhe Defendants sold the subject engine and subject vacuum pump to Air-Tec … and made arrangements to ship the subject engine and subject

2

7.    All of the Plaintiffs are residents of the state of Texas.

8.    MARILYN RUHE is a resident of the state of Ohio with a long-established residence only in Liepsic, Ohio.  She is the widow of Robert Ruhe, deceased.

9.    The RUHE CORPORATIONS are domestic Ohio corporations with business offices only in Liepsic, Ohio.  The RUHE CORPORATIONS were founded by Robert Ruhe, deceased.

10.    That Defendants AIG AEROSPACE INSURANCE SERVICES, INC. and CHARTIS AEROSPACE INSURANCE SERVICES, INC. are registered Georgia corporations.

11.    Plaintiffs' Complaint suggests this Court has specific jurisdiction over MARILYN RUHE and the RUHE CORPORATIONS pursuant to Florida Statute § 48.193(1)(a), (1)(b), (1)(f), or (1)(g).  Complaint, para. 16.  Notably, the cited statute does not have subsections numbered (1)(f) or (1)(g).  Fla. Stat. 48.193 (2013).

12.    Plaintiffs' Complaint then references various "acts" in paragraph 16, subparagraphs a. through d., that correlate generally with subsections (1)(a)1, (1)(a)2, (1)(a)6 and (1)(a)7 alleging MARILYN RUHE and the RUHE CORPORATIONS performed the following acts, respectively:

a.    "Operated, conducted, engaged in, or carried on a business or business venture in Florida or have or have had an office or agency within Florida.

---

vacuum pump to *Orlando, Florida*."  This is almost certainly incorrect as Air-Tec is registered to do business in Mims, Florida and conducts all of its business activities there.

[2] Plaintiffs allege in paragraph 20k that "Williamson sold the subject engine in *Mims, Florida* to Phillips."  This is almost certainly incorrect as Williamson Aircraft is registered to do business in Orlando, Florida and conducts all of its business activities there.

b.      "Committed a tortious act within Florida.

c.      "Caused injury to persons or property in Florida arising out of acts or omissions by the defendant outside Florida, and at the time of the injury, (i) the defendant engaged in solicitation or service activities within Florida; or (ii) products, materials, or things processed, served, or manufactured by the defendant anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

d.      "Breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida."

13.     Other than the paraphrased recitation of portions of the jurisdiction statute, Plaintiffs make only unsubstantiated conclusions of law – and provide no facts indicating MARILYN RUHE or the RUHE CORPORATIONS actually conducted any business activities in Florida, committed any tortious acts in Florida, caused injury to persons or property in Florida, or breached any contracts in Florida. Indeed, as is (or should be) well known to Plaintiffs after the taking of MARILYN RUHE's deposition in previous Texas litigation, there are no facts that will suffice to satisfy or support these jurisdictional requirements.

14.     Alternatively, Plaintiffs suggest "Defendants who have not sought and do not have authorization to transact business in Florida, [...] are subject to jurisdiction here under the provisions of Fla. Statute § 48.193(2) because they are engaged in substantial and not isolated activity within Florida" – i.e., under Florida's "long-arm" statute.

15.     As evidence of "substantial and not isolated activity within Florida," Plaintiffs' Complaint alleges MARILYN RUHE or the RUHE CORPORATIONS were

involved in the <u>single</u> act of a one-time sale of the aircraft engine and vacuum pump at issue from AIG AEROSPACE INSURANCE SERVICES, INC., and CHARTIS AEROSPACE INSURANCE SERVICES, INC. as salvage in Coral Springs, Florida which was followed *five years later* by a purchase of the aircraft engine and vacuum pump at issue by Air-Tec, Inc.  Complaint, paras. 20g, 20i.[3]  *There is no credible way to construe single transactions separated by a five-year time span as "substantial and not isolated activity" within Florida.*

16.    Moreover, Plaintiffs' Complaint alleges, as a basis for general jurisdiction, that MARILYN RUHE and the RUHE CORPORATIONS were "in the business of purchasing, marketing, selling and distributing aircraft parts, including but not limited to such parts as an engine (Serial No. L-20394-40A) and a vacuum pump 215CC (Serial No. 1706) which, through the stream of commerce, were sold in Florida."  Complaint, paras. 8-10.

17.    As evidenced by the attached affidavits of MARILYN RUHE (**Exhibit A**) and ERIC RUHE (**Exhibit B**), neither MARILYN RUHE nor the RUHE CORPORATIONS are or ever have been in the business of "purchasing, marketing, selling and distributing aircraft parts" as falsely alleged to the Court by Plaintiffs.

18.    BOB RUHE AG SERVICE, INC. is and was at all material times an agricultural spraying operation that provides farmers with aerial application of fertilizers, pesticides and fungicides on crops in the local Ohio area (and <u>not</u> Florida).

---

[3] Plaintiffs' Complaint admits the aircraft engine and vacuum pump at issue were crated when the aircraft was sold by AIG/Chartis and merely stored for five years in Ohio until finally sold in its crated condition to Air-Tec.  Complaint, para. 20h.

19.    RUHE SALES, INC. is and was at all material times a business that owned aircraft that were used to conduct local agricultural spraying operations for farmers predominantly in Ohio.

20.    BOB RUHE AG SERVICE, INC. employs Turbo Thrush aircraft to conduct agricultural spraying operations, *which cannot be outfitted with a Piper make and model engine such as the engine at issue*.

21.    Bob Ruhe, who passed away on September 10, 2008 purchased a salvage aircraft, which included the engine at issue, with the intent of rebuilding the aircraft or its useful, undamaged components in his other aircraft for his personal use

22.    As further established by the attached Affidavits, MARILYN RUHE and the RUHE CORPORATIONS do not maintain, and have never maintained at any time, any businesses, business ventures, offices or agents in the State of Florida.

23.    Furthermore, MARILYN RUHE and the RUHE CORPORATIONS have never been incorporated in the State of Florida nor have they ever been authorized at any time in the past or at the present time to do business in the State of Florida, nor have they sought the privilege of doing so.  Specifically, neither MARILYN RUHE nor the RUHE CORPORATIONS have ever applied for a resident or non-resident pesticide applicator's license pursuant to Florida Statute 487.011, *et seq*.

24.    Furthermore, MARILYN RUHE and the RUHE CORPORATIONS do not have any bank accounts, books, records, or telephone listings in the State of Florida.

25.     Furthermore, MARILYN RUHE and the RUHE CORPORATIONS do not place advertisements for products in newspapers printed in Florida nor do they place television or radio advertising for products with broadcasting stations directed into or based in Florida.

26.     Furthermore, MARILYN RUHE and the RUHE CORPORATIONS do not solicit orders from farmers in Florida in order to develop a market for agricultural spraying services.

27.     Finally, the engine was purchased by Robert G. Ruhe, deceased, as part of a salvage sale with the intent of rebuilding the aircraft for potential pleasure flying, which simply did not occur before his passing in 2008.

28.     The subject engine was sold strictly as a lingering asset from the Estate of Robert G. Ruhe after his death.  The subject engine was sold to Air-Tec, Inc.  AG Service did not arrange to ship the Subject Engine to any location, including Florida.  Rather, Air-Tec, Inc. made all arrangements for shipping the subject engine out of Ohio.  The sale was totally consummated, executed and concluded in Ohio, not in Florida.

29.     Plaintiffs' Complaint employs the option of using the language of the statute, i.e., that MARILYN RUHE and the RUHE CORPORATIONS "operated, conducted, engaged in and carried on a business or business venture in Florida," to satisfy the first prong of the analysis required to assert a statutory basis for long-arm jurisdiction.

30.     However, Plaintiffs' Complaint fails to establish whether MARILYN RUHE or the RUHE CORPORATIONS possess sufficient minimum contacts with the State of Florida to satisfy constitutional due process requirements, the second prong of the

analysis required to assert a statutory basis for long-arm jurisdiction under Florida Statute 48.193(2), as argued in the proceeding Memorandum of Law as to Personal Jurisdiction.

31.     This jurisdictional defect in Plaintiffs' Complaint requires the Court to quash the service of process on MARILYN RUHE and the RUHE CORPORATIONS and to dismiss Plaintiffs' Complaint for lack of personal jurisdiction.

## MEMORANDUM OF LAW AS TO PERSONAL JURISDICTION

32.     In order to determine whether foreign defendants can be made subject to the jurisdiction of Florida's federal or state courts, a two-prong test must be satisfied. Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). Under the first prong, the court must determine the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute. Id. If the first prong is factually satisfied, the court must determine whether the second prong, which requires the defendants to have sufficient constitutionally required "minimum contacts" with Florida to satisfy due process requirements, is satisfied. Id. See also Venetian Salami v. Parthenais, 554 So.2d 499 (Fla. 1989); Dico Company Inc. v. Meekins, 407 So.2d 1067 (Fla. 4th DCA 1981); W.C.T.U. Railway Co. v. Szilagyi, 511 So.2d 727 (Fla. 3d DCA 1987); PK Computers v. Independent Travel Agencies of America, Inc., 656 So.2d 254 (Fla. 4th DCA 1995); Washington Capital Corp. v. Milandco, Ltd., Inc., 695 So.2d 838 (Fla. 4th DCA 1997) (J. Pariente).   "The constitutional touchstone of the minimum contact analysis is whether 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate

being haled into court there.'" Ben M. Hogan Co., Inc. v. QDA Investment Corp., 570 So.2d 1349 (Fla. 3d DCA 1990) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985) (internal citation omitted)). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

33.     The facts presented by the attached Affidavits reveal there are insufficient contacts with the State of Florida to satisfy the due process requirement for obtaining personal jurisdiction over MARILYN RUHE or the RUHE CORPORATIONS via Florida's long-arm statute.

34.     By comparison, Plaintiffs have failed to establish the minimum contacts MARILYN RUHE and the RUHE CORPORATIONS must have with Florida to preclude the maintenance of a suit that "offends traditional notions of fair play and substantial justice." International Shoe Company v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945).

35.     The only jurisdictional fact pled in Plaintiffs' Complaint on which they base their contention that the Court should assert long-arm jurisdiction over MARILYN RUHE and the RUHE CORPORATIONS is that they were "in the business of purchasing, marketing, selling and distributing aircraft parts," including the aircraft engine and vacuum pump at issue in this litigation, "which, through the stream of commerce, were sold in Florida." Complaint, paras. 8-10.

36.     It should be obvious that the stream of commerce test is *inappropriately* asserted as a basis for jurisdiction under circumstances such as are alleged in this case. *Manufacturers* and *distributors* generally place *products* into the stream of commerce. It stretches credulity to contend isolated arms-length transactions involving a sale of salvage from a pair of managing general agents to an individual such as the deceased Mr. Ruhe and, following his death, subsequently to a supplier of aircraft engines and parts on a one-time basis by his Estate, constitutes the placing of product into the stream of commerce by a manufacturer or distributor. See, e.g., Maschinenfabrik Seydelmann v. Altman, 468 So.2d 286, 290 (Fla. 2d DCA 1985) (Minimum contacts are not established "merely by showing that a *manufacturer* could foresee that his *product* would be used in a particular state and that he derived some indirect economic benefit from its use."). There must be proof that the nonresident defendant engaged in some action *purposefully directed* toward the forum state. Kin Yong Lung Indus. Co., Ltd. v. Temple, 816 So.2d 663 (Fla. 2d DCA 2002) (internal citations omitted). "Such *purposeful availment* requires something more than merely placing a product into the stream of commerce." Id., citing Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 112, 107 S.Ct. 1026; Shin-Kobe Elec. Mach. Co. v. Rockwell, 750 So.2d 67, 69 (Fla. 2d DCA 1999); Altman, 468 So.2d at 290; Relco Shoe Mach., Ltd. v. Gonzalez, 559 So.2d 1251, 1252 (Fla. 3d DCA 1990); see also, Baranek v. American Optical Corp., 941 So.2d 1214 (Fla. 4th DCA 2006)("The stream of commerce test for jurisdiction is met if the nonresident defendant's *product* is purchased by or delivered to a *consumer* in the forum state, so long as the nonresident's conduct and

connection with the forum state are such that he should reasonably anticipate being haled into court there for claims arising out of that conduct.")

37.     Plaintiffs' allegation, by its very nature, fails to establish the minimum contacts MARILYN RUHE and the RUHE CORPORATIONS are required to have with Florida before the court can assert *in personam* jurisdiction over them.[4]

38.     Appellate courts have routinely quashed service and vacated judgments against foreign defendants when jurisdictional allegations have not been properly made. Dico Company, 407 So.2d at 1067; W.C.T.U. Railway Co., 511 So.2d at 730; Washington Capital Corp., 695 So.2d at 843; Greystone Tribeca Acquisition, LLC v. Ronstrom, 863 So.2d 473, 476 (Fla. 2d DCA 2004). See also PK Computers, Inc., 656 So.2d at 254; Camp Illahee Investors, Inc. v. Blackman, 870 So.2d 80 (Fla. 2d DCA 2003); Utility Trailer Manufacturing Co. v. Cornett, 526 So.2d 1064 (Fla. 1st DCA 1988).

## SERVICE OF PROCESS

39.     In order to perfect service on foreign corporations and residents such as MARILYN RUHE and the RUHE CORPORATIONS, Plaintiffs' Complaint must make a clear showing that the transaction out of which the cause of action arises is by its very nature a business activity or a link in a chain of acts which collectively constitute the doing of business in Florida by MARILYN RUHE and the RUHE CORPORATIONS.

---

[4] The court should take note that the state court in Texas where this case was initially filed dismissed the case against the Ruhe Corporations for lack of jurisdiction based on the same jurisprudential considerations noted in this Memorandum of Law – lack of substantial activity in the forum state and insufficient minimum contacts.

Lyster v. Round, 276 So.2d 186 (Fla. 1st DCA 1973); Pelycado Onroerend Goed B.V. v. Ruthenberg, 635 So.2d 1001 (Fla. 5th DCA 1994).

40.     Plaintiffs bear the initial burden of pleading the basis for service under the long-arm statute. Venetian Salami, 554 So.2d at 502; Dico Company, Inc., 407 So.2d at 1067; W.C.T.U. Railway Co. v. Szilagyi, 511 So.2d at 727; Washington Capital Corp. 695 So.2d at 838; Belz Investco Ltd. Partnership v. Groupo Immobiliano Cababie, S.A., 721 So.2d 787 (Fla. 3d DCA 1998); Greystone Tribeca, 863 So.2d at 473.  It may allege the basis for service either by utilizing the language of the statute without pleading supporting facts or by alleging specific facts demonstrating MARILYN RUHE's and the RUHE CORPORATIONS' actions fit within one or more of the subsections of §48.193, Florida's long-arm statute.  Venetian Salami, 554 So.2d at 502; Washington Capital Corp., 695 So.2d at 841; Belz Investco, 721 So.2d at 789; Greystone Tribeca, 863 So.2d at 475.

41.     If the allegations of the complaint are sufficient to establish Florida's long-arm jurisdiction, the burden shifts to MARILYN RUHE and the RUHE CORPORATIONS to contest jurisdiction by a legally sufficient affidavit or other similar sworn proof contesting the essential jurisdictional facts.  Venetian Salami, 554 So.2d at 502; Washington Capital Corp., 695 So.2d at 841; Belz Investco, 721 So.2d at 789; Greystone Tribeca, 863 So.2d at 475.

42.     The burden then returns to Plaintiffs who must, by affidavit or other sworn statement, refute the proof in MARILYN RUHE's and the RUHE CORPORATIONS'

affidavit. <u>Venetian Salami</u>, 554 So.2d at 502; <u>Washington Capital Corp.</u>, 695 So.2d at 841; <u>Belz Investco</u>, 721 So.2d at 789; <u>Greystone Tribeca</u>, 863 So.2d at 475.

43.     Should Plaintiffs fail to refute the allegations of MARILYN RUHE and the RUHE CORPORATIONS' affidavit, the court is required to grant a motion to dismiss, provided their affidavit properly contests the basis for long-arm jurisdiction by legally sufficient facts. <u>Venetian Salami</u>, 554 So.2d at 502; <u>Washington Capital Corp.</u>, 695 So.2d at 841; <u>Belz Investco</u>, 721 So.2d at 789; <u>Greystone Tribeca</u>, 863 So.2d at 475.

44.     If there is no conflict between the parties' affidavits as to the essential jurisdictional facts, the trial court can resolve the issue of jurisdiction on the basis of the affidavits. <u>Venetian Salami</u>, 554 So.2d at 502; <u>Washington Capital Corp.</u>, 695 So.2d at 841; <u>Belz Investco</u>, 721 So.2d at 789; <u>Greystone Tribeca</u>, 863 So.2d at 475.   If any essential facts relating to jurisdiction are in conflict, then the trial court must conduct a limited evidentiary hearing to resolve the disputed facts. <u>Venetian Salami</u>, 554 So.2d at 502; <u>Washington Capital Corp.</u>, 695 So.2d at 841; <u>Belz Investco</u>, 721 So.2d at 789. <u>See also</u> <u>Bellairs v. Mohrmann</u>, 716 So.2d 320 (Fla. 2d DCA 1998).

45.     Plaintiffs have erroneously alleged MARILYN RUHE and the RUHE CORPORATIONS "operated, conducted, engaged in and carried on a business or business venture in Florida," and have failed to allege whether or how the cause of action arose from these alleged business activities in Florida.

46.     The sworn Affidavits contradict Plaintiffs' erroneous allegations and clearly establish the fact that neither MARILYN RUHE nor the RUHE CORPORATIONS now or at any material time operated, conducted, engaged in or carried on any business or

business ventures in the State of Florida.  Indeed, how could one economically conduct agricultural (crop dusting) spraying operations in Florida from a base in northern Ohio? Furthermore, the Affidavits aver neither MARILYN RUHE nor either of the RUHE CORPORATIONS ever applied for or obtained a resident or non-resident pesticide applicator's license which would be required as a prerequisite to providing agricultural spraying services pursuant to Florida Statutes, § 487.011, *et seq.*

47.    Since Plaintiffs' allegations regarding MARILYN RUHE's and the RUHE CORPORATIONS' presence in the state are contradicted by the sworn affidavits of Marilyn Ruhe and Eric Ruhe, Plaintiffs' Complaint fails to allege a valid factual basis for service using the language of the statute or through the allegation of specific facts demonstrating MARILYN RUHE's and the RUHE CORPORATIONS' actions fit within one or more of the subsections of §48.193, Florida Statutes.

48.    Having failed to make the proper jurisdictional allegations in their Complaint, and having failed to establish MARILYN RUHE's and the RUHE CORPORATIONS' minimum contacts with the State of Florida, Plaintiffs' service is not perfected and the trial court may not, therefore, assert jurisdiction over MARILYN RUHE and the RUHE CORPORATIONS.  Sun State Assocs. Ltd. v. Continental Ill. Nat'l Bank Trust Co. of Chicago, 481 So.2d 543, 544 (Fla. 2d DCA 1986).

WHEREFORE, Defendants, MARILYN RUHE and the RUHE CORPORATIONS respectfully request this Court enter an order quashing the service of process and dismissing Plaintiffs' case for lack of personal jurisdiction over MARILYN

RUHE and the RUHE CORPORATIONS and to grant such other relief as the interests of justice may require.

## CERTIFICATE OF SERVICE

I hereby certify that on 9th day of June, 2014 the foregoing document was electronically filed with the Court's CM/ECF system, which will electronically serve all counsel of record on the attached Service List.

**Alexander Muszynski, III, Esq.**
Florida Bar No. 438502
**Cameron E. Shackelford, Esq.**
Florida Bar No. 640441
Meier, Bonner, Muszynski, O'Dell
& Harvey, P.A.
260 Wiekiva Springs Road
Suite 2000
Longwood, FL 32779
(407) 872-7774 / Fax: (407) 872-7997
Attorneys for Defendants,
MARILYN RUHE, BOB RUHE AG
SERVICE, INC.; and RUHE SALES, INC.

SERVICE LIST

mmokwa@maherlawfirm.com
Matthew S. Mokwa, Esquire
Steven R. Maher, Esquire
Maher Law Firm, P.A.
631 West Morse Blvd
Suite 200
Winter Park, FL 32789
Local Counsel for all Plaintiffs

msimpson@sbplaw.com
Michael A. Simpson, Esquire
Pro Hac Vice
Simpson, Boyd, and Powers, PLLC
105 North State Street, Suite B
Post Office Box 957
Decatur, TX 76234
Individual Counsel for Monty Clay,
individually and as next friend of J.C.C.
and J.M.C.,
and as Personal Representative of the
Estate of Amy Clay; Lynda Wilson

wangelley@bvalaw.com
William Angelley, Esquire
Pro Hac Vice
Angelley, LLP
4514Cole Avenue
Suite 600
Dallas, TX 75205
Counsel for Plaintiffs Dale Phillips, Sr.,
individually and as the Personal
Representative of the Estate of Dale
Leighroy Phillips, Jr.;

rob@waltman.com
Robert Waltman, Esquire
Pro Hac Vice
Waltman & Grisham
2807 South Texas Avenue
Suite 201
Bryan, TX 77802

Counsel for Plaintiffs Linda Phillips, as
next friend of G.A.P. and Brendan
Phillips

David.abrams@dabramslaw.com
David Howard Abrams, Esquire
Law Office of David H. Abrams
Post Office Box 951905
Lake Mary, FL 32795-1905
And
Pat.phillips@patphillipslaw.com
R. Patrick Phillips, Esquire
Law Office of R. Patrick Phillips
200 North Thornton Avenue
Orlando, FL 32801
Counsel for Defendant Air-Tec, Inc. and
Williamson Aircraft, Inc.

jevangelista@bushross.com
James J. Evangelista, Esquire
jwelsh@bushross.com
Joshua P. Welsh, Esquire
Bush Ross, P.A.
1801 North Highland Avenue
Post Office Box 3913
Tampa, FL 33602
Counsel for Defendants AIG Aerospace
Insurance Services, Inc. and Chartis
Aerospace

<u>**AFFIDAVIT OF MARILYN D. RUHE<br>IN SUPPORT OF HER INDIVIDUAL MOTION<br>AND THAT OF BOB RUHE AG SERVICES, INC. AND RUHE SALES, INC.'S<br>MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF<br>PERSONAL JURISDICTION AND TO QUASH SERVICE OF PROCESS**</u>

STATE OF OHIO

COUNTY OF PUTNAM

Before me, the undersigned authority, duly authorized to administer oaths and take acknowledgements, personally appeared MARILYN D. RUHE who, after being first duly sworn, deposes and states:

1. That I am over eighteen (18) years of age, *sui juris*, and have personal knowledge of all the facts set forth herein.

2. That if called upon to testify in person regarding the facts in this Affidavit, I would do so consistently and in accordance with the facts set forth herein.

3. That I am and at all material times have been a resident of the state of Ohio and have never been a resident of the state of Florida.

4. That I do not transact business in the field of aviation as an individual.

5. That I am an officer of Bob Ruhe Ag Service, Inc. (hereinafter, "Ag Service") and Ruhe Sales, Inc. (hereinafter, "Ruhe Sales").

6. That Ag Service is an Ohio domestic corporation with offices in Leipsic, Ohio. Ag Service has never been incorporated in the State of Florida nor has it ever been authorized, at any time in the past or at the present time, to do business in the State of Florida, nor has it sought the privilege of doing so.



7.     That Ruhe Sales is an Ohio domestic corporation with offices in Leipsic, Ohio. Ruhe Sales has never been incorporated in the State of Florida nor has it ever been authorized, at any time in the past or at the present time, to do business in the State of Florida, nor has it sought the privilege of doing so.

8.     That I have prepared this Affidavit on behalf of myself in my individual capacity and on behalf of Ag Service and Ruhe Sales in my corporate officer capacity.

9.     That Ag Service is an agricultural spraying operation that provides for the aerial application of fertilizers, pesticides and fungicides on crops primarily situated in Ohio.

10.    That Ruhe Sales is a business that has owned aircraft from time to time for the purpose of conducting aerial applications of fertilizers, pesticides and fungicides on crops.

11.    That Ag Service and Ruhe Sales were both incorporated by my husband, Robert G. Ruhe, now deceased.

12.    That Robert G. Ruhe passed away on September 10, 2008.

13.    That neither I nor Ag Service or Ruhe Sales are in the business of purchasing, marketing, selling, and distributing aircraft components.

14.    That neither I nor Ag Service or Ruhe Sales have offices at any location in the state of Florida.

15.    That the business offices for Ag Service and Ruhe Sales are and always have been located only in Leipsic, Ohio.

2

16.     That neither I nor Ag Service or Ruhe Sales have a registered agent located in the state of Florida

17.     That neither I nor Ag Service or Ruhe Sales are registered to do business in the state of Florida, nor has a resident or non-resident pesticide applicator's license ever been sought from the state of Florida pursuant to Florida Statutes, § 487.011, *et seq.*

18.     That neither I nor Ag Service or Ruhe Sales have any bank accounts in the state of Florida.

19.     That neither I nor Ag Service or Ruhe Sales maintain any P.O. Boxes or business addresses for the receipt of mail in the state of Florida.

20.     That neither I nor Ag Service or Ruhe Sales pay any taxes to the state of Florida.

21.     That neither I nor Ag Service or Ruhe Sales own or lease any property in Florida.

22.     That neither I nor Ag Service or Ruhe Sales maintain any telephone lines or cable services in Florida.

23.     That neither I nor Ag Service or Ruhe Sales own, possess, or control any tangible or intangible assets or interests in the state of Florida.

24.     That neither I nor Ag Service or Ruhe Sales have any employees, representatives or agents operating on any behalf in the state of Florida.

25.     That neither I nor any other employee of Ag Service or Ruhe Sales have ever traveled to the state of Florida for business purposes.

3

26.     That neither I nor any other employee of Ag Service or Ruhe Sales have ever committed any tortious conduct within the state of Florida.

27.     That neither I nor any other employee of Ag Service or Ruhe Sales have caused any injury to persons or property in the state of Florida.

28.     That neither I nor Ag Service or Ruhe Sales advertise for business in the state of Florida. Neither Ag Service nor Ruhe Sales places advertisements in newspapers printed in Florida nor do they place television or radio advertising with broadcasting stations based in Florida.

29.     That neither Ag Service's nor Ruhe Sales's business plans are directed to the sale of business services in the state of Florida.

30.     That neither I nor Ag Service or Ruhe Sales have ever established any channel for providing business information to potential customers in the state of Florida.

31.     That neither I nor Ag Service or Ruhe Sales have ever shipped, distributed or provided products, including any aircraft components, to residents of the state of Florida as part of any systematic or continuous business operation.

32.     That neither I nor Ag Service or Ruhe Sales have ever established any distribution channel for providing products, including any aircraft components, to residents of the state of Florida as part of any systematic or continuous business operation.

33.     That neither I nor Ag Service or Ruhe Sales have ever provided any business services as aircraft parts dealers, suppliers, or distributors.

4

34.     That Ag Service and Ruhe Sales provide the overwhelming majority of their business services in the state of Ohio.

35.     That Ag Service and Ruhe Sales have never provided business services in the state of Florida.

36.     That it would be a tremendous financial and personal burden on myself to defend a lawsuit in the state of Florida.

37.     That it would be a tremendous financial burden on Ag Service and Ruhe Sales to defend a lawsuit in the state of Florida.

38.     That I have personally reviewed the Complaint filed in the United States District Court for the Middle District of Florida under Case Number 6:14-cv-235-Orl-36GJK.

39.     That the Complaint references an aircraft engine, serial number-20394-40A and a related vacuum pump 215CC, serial number 1706 (collectively, "Subject Aircraft Components") with which I'm familiar solely as a result of the instant litigation and preceding litigation in the state of Texas.

40.     That, assuming the Subject Aircraft Components include the vacuum pump as alleged, the Subject Aircraft Components were purchased by Robert G. Ruhe as part of an aircraft salvage sale that my husband intended to rebuild as a pleasure aircraft.

41.     That, assuming the Subject Aircraft Components include the vacuum pump as alleged, the Subject Aircraft Components were sold strictly as a lingering asset from the Estate of Robert G. Ruhe after his passing.

5

42.   That upon information and belief, and assuming the Subject Aircraft Components include the vacuum pump as alleged, the Subject Aircraft Components were never used to propel an aircraft in flight in the state of Florida.

43.   That neither I nor any employee of Ag Service or Ruhe Sales could have foreseen that the Subject Aircraft Components, assuming the Subject Aircraft Components include the vacuum pump as alleged, would be subsequently sold into the state of Texas or used on a flight from Texas to Oklahoma.

44.   That I do not otherwise have any personal or business contacts with the state of Florida.

FURTHER AFFIANT SAYETH NOT.

_Marilyn D. Ruhe_
MARILYN D. RUHE
Individually, as on behalf of Bob Ruhe
Ag Services, Inc. and Ruhe Sales, Inc.

STATE OF OHIO

COUNTY OF PUTNAM

The foregoing instrument was subscribed and sworn before me this _5th_ day of _June_, 2014, by Marilyn D. Ruhe, who is personally known to me or who has produced _____ as identification.

Notary Public

My Commission Expires: Notary Public, State of Ohio
Kathi Amstutz
My Commission Expires
February 5, 2019

(seal)

6

### AFFIDAVIT OF ERIC J. RUHE IN SUPPORT OF BOB RUHE AG SERVICE, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND TO QUASH SERVICE OF PROCESS

#### Affidavit of Eric J. Ruhe

I, Eric J. Ruhe, do hereby declare and certify as follows:

1.      I am over eighteen (18) years of age, *sui juris*, and have personal knowledge of all the facts set forth herein. If called upon to testify in person, I would do so in accordance with the facts set out by me herein.

2.      I am an officer of Bob Ruhe AG Service, Inc. (hereinafter "AG Service").

3.      I make this Affidavit on behalf of AG Service.

4.      AG Service is an Ohio domestic corporation with offices in Leipsic, Ohio. AG Service has never been incorporated in the state of Florida nor has it ever been authorized, at any time in the past or at the present time, to do business in the state of Florida, nor has it sought the privilege of doing so.

5.      AG Service is an agricultural spraying operation that provides for the aerial application of fertilizers, pesticides and fungicides on crops primarily situated in Ohio. The application of pesticides in a specific state typically requires a state-issued license. AG Service has neither sought nor obtained a Florida pesticide application license that would enable AG Service to spray pesticides in the state of Florida.

6.      AG Services was founded by my late father, Robert G. Ruhe, now deceased.

7.      Robert G. Ruhe passed away on September 10, 2008.

8.      AG Service is not in the business of purchasing, marketing, selling, and distributing aircraft components.

9.      AG Service does not have an office at any location in Florida.



10.     AG Service's sole offices are and always have been located in Leipsic, Ohio.

11.     AG Service does not have a registered agent located in Florida.

12.     AG Service is not registered to do business in Florida.

13.     AG Service does not have any bank accounts in Florida.

14.     AG Service does not maintain any P.O. Boxes in Florida.

15.     AG Service does not pay taxes to Florida.

16.     AG Service does not own or lease any property in Florida and owns no telephone lines in Florida.

17.     AG Service does not own, possess, or control any assets or interests within Florida.

18.     AG Service does not have any employees, representatives or agents operating on its behalf in Florida.

19.     AG Service's employees do not, and have never, travelled to Florida for their business purposes.

20.     AG Service has not committed tortious conduct or caused an injury within Florida.

21.     AG Service has not operated, conducted, engaged in, or carried on a business or business venture in Florida.

22.     AG Service has not caused any injury to persons or property in the state of Florida.

23.     AG Service does not advertise to Florida residents or engage in solicitation or service activities within Florida.  AG Service does not place advertisements in newspapers

printed in Florida nor does it place television or radio advertising with broadcasting stations based in Florida.

24.    AG Service's business plans are not purposefully directed to sales or services in Florida.

25.    AG Service has never established channels for providing regular advice to customers in Florida.

26.    AG Service has never shipped, distributed or provided products, including aircraft components, to residents of the state of Florida as part of any systematic or continuous business operation.

27.    AG Service has never established distribution channels for providing products, including aircraft components, to residents of the state of Florida as part of any systematic or continuous business operation.

28.    AG Service is not an aircraft parts dealers, suppliers, or distributors.

29.    AG Service provides the overwhelming majority of its services in the state of Ohio.

30.    AG Service has never provided business services in the state of Florida.

31.    AG Service has never provided services to customers who were residents of the state of Florida.

32.    It would be a tremendous burden on AG Service to defend itself in the state of Florida.

33.    I have reviewed the First Amended Complaint filed in the United States District Court for the Middle District of Florida under Case Number 6:14-cv-235-Orl-36GJK.

34.     The First Amended Complaint references an engine with Serial No. L-20394-40A (hereinafter "Subject Engine") and a vacuum pump 215CC with Serial No. 1706 ("Subject Vacuum Pump"). The subject engine and the subject vacuum pump will collectively be referred to as the "Subject Aircraft Components").

35.     My father, Mr. Ruhe, purchased an aircraft N33033, including the Subject Engine, as part of an aircraft salvage sale that my father intended to rebuild as a pleasure aircraft. I have not verified whether this also included the subject vacuum pump. The Subject Engine was never intended for use by AG Service. AG Service employs Turbo Thrush aircraft to conduct agricultural spraying operations, which cannot be outfitted with a Piper engine such as the Subject Engine. However, my father died before he had an opportunity to rebuild the aircraft, including the Subject Engine.

36.     The Subject Engine was sold strictly as a lingering asset from the Estate of Robert G. Ruhe after his passing.

37.     In August of 2011, I responded to an advertisement from Air-Tec, Inc. on barnstormers.com. Air-Tec, Inc. was seeking to purchase Lycoming engine components. Thereafter, the Subject Engine was sold to Air-Tec, Inc. AG Service did not arrange to ship the Subject Engine to any location, including Florida. Rather, Air-Tec, Inc. made all arrangements for shipping the Subject Engine out of Ohio. The sale was consummated in Ohio, not in Florida.

38.     Moreover, the individual from Air-Tec, Inc. specifically informed me that Air-Tec, Inc. overhauls Lycoming engines and exports them to Russia. Usage of the Subject Engine in Florida or Texas was never mentioned.

39.     Upon information and belief, the Subject Engine was never used to propel an aircraft in flight in the state of Florida.

40.    Neither I nor any employee of AG Service could have foreseen that the Subject

Engine would be subsequently sold into the state of Texas or used on a flight from Texas to

Oklahoma.

41.    Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.

FURTHER THE AFFIANT SAYETH NOT

Executed on this _6th_ day of June, 2014,

_____

Eric J. Ruhe
on behalf of Bob Ruhe AG Service, Inc.